IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| IN RE: Jarrod Reed Erwin | § <br> § | BANKRUPTCY NO. 23-31315 <br> (Chapter 7) |

**EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY BY PLAINTIFFS IN** *In re: AME Church Employee Retirement Fund Litigation*
**MDL No. 1:22-md-03035**

**This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.**

**Represented parties should act through their attorney.**

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**

**NOW COME** the Plaintiffs ("Movants") in *In re: AME Church Employee Retirement Fund Litigation* MDL No. 1:22-md-03035 ("AME Church MDL"), parties in interest, and file this Motion for Relief from Automatic Stay pursuant to 11 U.S.C. § 362(d), Rule 4001(a)(1) of the Federal Rules of Bankruptcy Procedure, and Local

Rules 4001-1 and 9013-1(i) in connection with the pending lawsuit in which the Debtor Jarrod Reed Erwin is a defendant.

## Jurisdiction

1. The Court has jurisdiction over this case and this contested matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, 11 U.S.C. § 362, and Rule 4001 of the Federal Rules of Bankruptcy Procedure. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

## Factual Background

2. The AME Church MDL centers on the loss of more than $90 million dollars from the retirement fund ("the AME Fund") for clergy members of the African Methodist Episcopal Church ("AMEC"). One of the primary vehicles for the loss was an investment fund, "Motorskill," owned and managed by the Debtor and his father and brother, Randall and Ryan Erwin.

3. Movants are currently engaged in litigation to recover the lost assets from various defendants including AMEC and its leadership, the plan administrator, the primary investment holder, the director of the retirement fund Dr. Jerome V. Harris, and its agent/broker among others.

4. Additionally, Movants are seeking to recover significant assets from a group of venture capital companies: Motorskill Asia Ventures I, L.P., Motorskill Ventures I, L.P., Motorskill Venture Group, and Motorskill Asia Venture Group. Collectively these entities are referred to as the Motorskill Defendants. These are the Motorskill Defendants run by the Debtor and his father and brother as noted above.

5. The Debtor was president of Motorskill Asia Ventures I, L.P. and Motorskill Ventures I, L.P.

6. The Motorskill Defendants appear to have been primarily involved in telecommunications, technology, and solar energy among other industries.

7. From approximately 2005 to 2016, the AME Fund invested (either directly or indirectly via investment entities set up by the AME Fund director) a total of between $30 and $40 million in the Motorskill Defendants.

8. In 2019, the Motorskill Defendants stopped sending investment return statements to Dr. Harris. Dr. Harris continued to request statements until he was sent a letter by the Motorskill Defendants' attorney on June 11, 2021, informing him that "there [was] nothing of any meaningful value remaining in the [Motorskill venture capital fund]."

9. In other words, the Debtor and Motorskill Defendants had somehow lost the entire AME Fund investment. Tens, if not hundreds, of millions of dollars, money that was meant to fund the retirements of thousands of African American ministers, had vanished.

10. AMEC publicly admitted in January of 2022 that more than $90 million was missing from the AME Fund.

11. The first of several complaints in the AME Church MDL was filed in early March of 2022 and all of the ensuing complaints were consolidated into an MDL in June of 2022. A Consolidated Amended Complaint was filed in August of 2022.

12. Since the beginning of the AME Church MDL, the Debtor has frustrated and delayed the efforts of Movants in prosecuting their case.

13. The Debtor dodged service for several months before Movants were able to obtain service on December 1, 2022.[1]

14. In fact, the Debtor sold his home shortly after news of the AME Fund scandal went public and moved into a temporary rental residence.

15. Although Movants were able to obtain service on the Debtor eventually,[2] they continued to struggle to locate the Debtor's father, Randall Erwin.

16. Only two of the four Motorskill Defendants have been successfully served and the two that were served have not responded.

17. In response to the difficulties posed by the Debtor's lack of cooperation, the court in the AME Church MDL entered an order on December 14, 2022, permitting Movants to conduct a two-hour deposition of the Debtor for the limited purpose of obtaining information regarding the location of Randall Erwin and his current health status (the Debtor's father was rumored to be in poor health) as well as the contact information and basic structural information of Motorskill. [AME Church MDL ECF No. 165].

---

[1] The process server stated in his service affidavit that "Jarrod was always 'running errands.' I believe that Jarrod was avoiding me." See **Exhibit 1** attached.

[2] In reporting on his successful service, the processor server told Plaintiffs' counsel: "[Jarrod's wife] refused me and stated that she was 'not taking anything from me' and started walking away from me. I advised her that I would place the subpoena with the affidavit that I had in a blue folder underneath her driver's side windshield wiper on her blue SUV. She shouted at me that I was an 'asshole' and told me, 'I hope you enjoy your job.'" See **Exhibit 2** attached.

18. Instead of complying with the court's order, the Debtor moved for a protective order seeking to set aside the order on December 30, 2022, contending that providing information on his father would "annoy, embarrass or unduly burden a man in poor health" and that the Motorskill Defendants "have not been conducting business for some time." [AME Church MDL ECF No. 171].

19. Movants filed a response in opposition on January 13, 2023, [AME Church MDL ECF No. 180], and the Debtor replied on Friday, January 27, 2023, [AME Church MDL ECF No. 186].

20. The court denied the Debtor's motion for a protective order on Monday, January 30, 2023, stating that "[the Debtor] has not demonstrated with any particular and specific facts the actual harm, as contemplated by Rule 26(c)(1) [of the Federal Rules of Civil Procedure], that will befall Randall Erwin if [Movants] serve him with process. Instead, Defendant Erwin merely offers vague and conclusory statements of harm." [AME Church MDL ECF No. 187].

21. The court went on to conclude: "Combining the knowledge that Defendant Jarrod Erwin seems to posses about the Motorskill Defendants, plus his father's involvement with those entities, and his assertion that Randall Erwin's 'mental condition has deteriorated,' it is prudent that [Movants] be permitted to obtain information concerning the structure and contact information for the Motorskill Defendants at this stage of litigation." [AME Church MDL ECF No. 187].

22. The court directed the deposition to take place within 30 days unless the parties stipulated otherwise.

23. Despite the court's reasoned and straightforward denial of the Debtor's motion for a protective order and its recognition that time was of the essence, the Debtor further frustrated Movants' efforts to schedule the deposition.

24. Before Movants were able to schedule the deposition, Movants were informed at a February 24, 2023 status conference that the Debtor's father, Randall Erwin, had just died.

25. A few days later, the Debtor's counsel in the AME Church MDL, Perry Craft, informed Movants' counsel there were more than 30 boxes of documents related to the Debtor, his father and brother, and the Motorskill entities that were supposedly being delivered to Mr. Craft's office in Nashville. Mr. Craft indicated he expected the documents to be delivered by early April.

26. In order to allow the Debtor a modicum of peace to mourn his father's passing, Movants did not initiate further communications to schedule the Debtor's deposition or regarding the production of the documents for a few weeks.

27. On March 23, 2023, Mr. Craft informed Movants' counsel that he would have the documents on April 6, 2023 and would make the Debtor's initial disclosures that same day. Mr. Craft also suggested April 26, 2023 for the Debtor's deposition.

28. However, follow-up attempts from March 23, 2023 to April 5, 2023 to confirm a date for the Debtor's deposition were unsuccessful and Movants served notice of the Debtor's deposition on April 7, 2023.

29. The Debtor's deposition was noticed for April 24, 2023.

30. Later that same day, on April 7, 2023, Movants' counsel learned from Mr. Craft that the Debtor intended to file a bankruptcy petition.

31. Mr. Craft explained that as of Wednesday, April 5, 2023, he had been expecting the documents to be delivered to his office on April 8, 2023. Instead, he learned on Thursday, April 6, 2023 that the Debtor was going to be filing for bankruptcy and, apparently, plans had changed about whether to deliver these documents to his office. **Mr. Craft indicated that as a result of the bankruptcy petition and the automatic stay, the Debtor would no longer be attending the deposition or providing the documents as discussed**.

## Basis of Relief

32. The Debtor has filed his Chapter 7 petition to frustrate and delay the proceedings against him in the AME Church MDL.

33. At this stage of the AME Church MDL, it is unclear what investments, if any, the Motorskill Defendants were making with AME Fund assets, and it is possible that it may have been fraudulent scheme the entire time.

34. Likewise, it is unknown whether the Motorskill Defendants, at the direction of the Debtor and Randall and Ryan Erwin made bad investments with the AME Fund assets, whether the Debtor and Randall and Ryan Erwin were skimming money for themselves, or whether it was some combination of the two.[3]

---

[3] Movants have seen evidence that other investors had invested millions of dollars in the entities controlled by Debtor, Randall, and Ryan Erwin, and that their money may have similarly vanished like the AME Fund's did.

35. Could there be AME Fund assets that are still recoverable? If so, how much longer will the window of opportunity be open for Movants to find them?

36. Because of the Debtor's dilatory tactics, Movants lost the opportunity to locate Randall Erwin and obtain information directly from him about the Motorskill Defendants—information which could be critical to questions of liability and harm and to recovering the AME Fund assets.

37. Moreover, the Debtor himself has information about the structure of the Motorskill Defendants that is likely critical to Movants' discovery efforts.

38. It has been four months since the court ordered the deposition of the Debtor (after it took nearly four months for Movants to obtain service on the Debtor), and Movants have only another four and a half months until the deadline in the AME Church MDL to complete fact discovery (August 30, 2023).

39. The Debtor filed his Chapter 7 bankruptcy petition just as Movants were noticing his deposition and the documents critical to this case were supposedly being delivered to Mr. Craft. This timing is not a coincidence.[4]

40. Furthermore, the court issued an order on March 17, 2023 partially denying the motions to dismiss of several defendants and accordingly, Movants' discovery efforts are continuing in earnest.

---

[4] Movants also note that the Debtor's Voluntary Petition for Individuals Filing for Bankruptcy (ECF No. 1), identified that his debts were primarily consumer debts, and that he had between 50-99 creditors. Although he still hasn't filed the information required by 11 U.S.C. § 521, this information already appears to be incorrect since the mailing list on his Form 309A only identifies less than 30 potential creditors in addition to listing the Movants attorneys. *See* ECF No. 6, pp. 3-5.

41. This Court may grant relief from the stay for cause pursuant to 11 U.S.C. § 362(d)(1). Although the Bankruptcy Code does not define "for cause," this Court has the discretion to lift or modify the stay after examining the totality of the circumstances. *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998).

42. "The automatic stay of actions against a debtor is a potent judicially enforced weapon designed to afford breathing space and a fresh start for the 'honest by unfortunate debtor.' That weapon had no place being deployed against honest but unfortunate creditors who stand in the path of a dishonest bankrupt." *In re Krueger*, 812 F.3d 365, 373 (5th Cir. 2016) (internal citations omitted).

43. The Debtor, by his actions in the AME Church MDL thus far, has shown himself to be capable of wielding bankruptcy proceedings as a weapon against Movants, a group of honest but unfortunate creditors.

44. Moreover, the Bankruptcy Code excepts from discharge any debt "for money, property, services . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A).

45. Section 523(a)(2)(A) carries no "restitutionary ceiling" as the Supreme Court has determined that this section "excepts from discharge *any* debt arising from the debtor's fraud." *Miller v. Lewis*, 391 B.R. 380, 385 (E.D. Tex. 2008) (citing *Cohen v. de la Cruz*, 523 U.S. 213, 219 (1998)).

46. Additionally, in the Fifth Circuit, "the debtor does not need to have obtained *any* benefit from the fraud" for a creditor to claim nondischargeability under

9

§ 523(a)(2)(A). *In re Bain*, 436 B.R. 918, 922 (S.D. Tex. 2010) (citing *In re M.M. Winkler & Assocs.,* 239 F.3d 746, 749 (5th Cir. 2001)).

47.     Among the claims filed against the Debtor in the AME Church MDL are fraudulent concealment and fraudulent misrepresentation in relation to the investments of AME Fund assets in the Motorskill Defendants operated by the Debtor, his father, and his brother.

48.     Accordingly, if Movants obtain a judgment against the Debtor for fraudulent concealment and fraudulent misrepresentation, any debts arising from that fraud would not be discharged in bankruptcy anyway.

## Certificate of Conference

49.     Movants certify that on April 14, 2023, Movants conferred with the Debtor by calling Debtor's bankruptcy counsel, Reese W. Baker. Mr. Baker stated that the Debtor OPPOSED the relief requested herein.

## Request for Emergency Relief

50.     As Movants detailed in the factual background, their efforts to serve, conduct a court-order deposition, obtain initial disclosures, and obtain document discovery have been frustrated by the Debtor at every step of the AME Church MDL. Now, as soon as Movants noticed the deposition, the Debtor has attempted to dodge Movants once again by filing what is likely a dishonest bankruptcy. Movants need to proceed with the Debtor's deposition on Monday, April 24, 2023 and therefore need the requested relief as soon as possible and by Friday, April 21, 2023 at a minimum.

51. Staying or delaying the Debtor's deposition any further will adversely impact Movants' efforts to proceed with fact discovery in critical ways to the whole of the case in light of the magnitude of the investment in entities run by the Debtor. Movants need to understand the structure of the Motorskill Defendants to proceed accurately with discovery related to other defendants.

## Prayer for Relief

52. Movants request this Court terminate the automatic stay for cause so that Movants may proceed with their causes of action currently pending in the AME Church MDL against the Debtor.

53. In the alternative, Movants request this Court modify the automatic stay in relation to the AME Church MDL (1) to allow Movants to proceed with the Debtor's deposition on April 24, 2023; (2) to direct the Debtor to enter initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure; and (3) for the approximately 30 boxes of documents that were originally being delivered to Mr. Craft on April 8, 2023 to be redirected to Mr. Craft so that Movants may proceed with discovery related to those documents.

54. Lastly, Movants request that the 14-day stay period otherwise imposed by Rule 4001(3) of the Federal Rules of Bankruptcy Procedure not apply to any order of this Court granting relief from the automatic stay in this matter.

Date: April 17, 2023

                                              */s/ Randi Kassan*
                                              **MILBERG COLEMAN BRYSON**
                                              **PHILLIPS GROSSMAN, PLLC**

Randi Kassan
100 Garden City Plaza
Suite 500
Garden City, NY 11530
516-741-5600
rkassan@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Matthew E. Lee*
900 W. Morgan Street
Raleigh, NC 27603
919-600-5000
Fax: 919-600-5035
mlee@milberg.com

**\***Application for admission forthcoming.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2023, I caused the foregoing to be filed via the Court's electronic filing system and pursuant to Bankruptcy Rule 4001(a) and Local Rule 4001 to the parties listed in ECF No. 6 via first-class mail, undersigned counsel emailed Debtor and the Debtor's attorney a copy of same.

 /s/ Randi Kassan  
Randi Kassan