# EXHIBIT 2

# ROY RANDOLPH ERWIN REVOCABLE TRUST

**Prepared by:**

**SWAIN LAW FIRM PC**
**945 Bunker Hill Road**
**Suite 680**
**Houston, Texas 77024**

**713/957-8932**

# ROY RANDOLPH ERWIN REVOCABLE TRUST

THIS TRUST AGREEMENT is entered into on the *13th* day of *MAY*, in the year 2021, between ROY RANDOLPH ERWIN, of Fort Bend County, Texas, as settlor (the "Settlor") and as initial trustee (the "Trustee").

## W I T N E S S E T H:

The Settlor desires to create a trust to be held, administered and distributed in accordance with the provisions of this Trust Agreement. Accordingly, the Settlor has transferred to the Trustee, and the Trustee acknowledges receipt from the Settlor of properties listed on the attached Schedule "A." These properties, together with any other property which may hereafter be conveyed to the Trustee subject to the trust hereby created, shall be held, administered and distributed by the Trustee, upon the trust and for the purposes and uses herein set forth. The trust initially created by this Trust Agreement shall be known as the "ROY RANDOLPH ERWIN REVOCABLE TRUST."

## Article I.
## Identification

**A**.  **Marital Status.**  The Settlor is not currently married.

**B**.  **Children.**  The Settlor has four children, JARROD REED ERWIN, RYAN CORBETT ERWIN, KIMBERLY RENEE LEVICKY and RANDALL CHEN ERWIN. All references in this Trust Agreement to the "Settlor's children" are to them. In addition, all references in this Trust Agreement to the "Settlor's descendants" are to the Settlor's children (as defined above) and to all of their respective descendants.

1

**Article II.**
**Initial Revocable Trust**

**A.     Distributions.** The Trustee shall hold, manage, sell, exchange, invest and reinvest the trust property, collect all income and, after deducting such expenses as are properly payable, shall accumulate and distribute the income and principal as herein provided. The Trustee shall distribute the income and principal of the trust to the Settlor in such amounts as the Settlor may direct. All undistributed trust income shall be accumulated and invested. The Trustee shall distribute such amounts of the income and principal of the trust for the comfort, health, support, maintenance or other needs of the Settlor as the Trustee shall determine, in the Trustee's discretion, to be necessary or appropriate to maintain the Settlor in accordance with the Settlor's accustomed standard of living at the time of the execution of this Trust Agreement.

**B.     Additions After Death of Settlor.** After the death of the Settlor, the Trustee shall add to this trust all property which was owned by the Settlor and which is received by the Trustee under the Settlor's Will and all non-probate assets (which shall include, but not be limited to, any payments from an employee or self-employed benefit plan, individual retirement account or annuity or any proceeds of any insurance policy on the life of the Settlor) which are payable to the Trustee hereunder.

**C.     Memorandum.** The Settlor requests that the beneficiaries of the trust created by this Article and the Trustee honor the provisions of any memorandum written by the Settlor directing the disposition of any portion of the Settlor's personal and household effects upon the death of the Settlor.

**D.     Distribution After Death of Settlor.** After the death of the Settlor and the additions in Article II, Section B, the Trustee shall make the following distribution: my 2019 Dodge Grand Caravan, VIN #2C7WDG-BG8KR504227 shall be distributed to my caregiver, OLUFUNSO ERINLE; provided if OLUFUNSO ERINLE fails to survive the Settlor, this distribution shall lapse.

**E.     Payment of Taxes.** After the death of the Settlor, all estate, inheritance or similar taxes (including interest and penalties thereon) arising in connection with the Settlor's death with respect to any property included in the Settlor's gross estate for the purpose of calculating such taxes, whether or not such property passes under this Trust Agreement, under the Settlor's Will, or otherwise, shall be paid from the remaining property of this trust. This Section shall not apply to any generation skipping transfer



taxes imposed by Section 2601 of the Code, which taxes shall instead be payable in accordance with the provisions of Section 2603 of the Code.

     **F.**    **Payment of Expenses.** The Trustee, in the Trustee's discretion, may pay from the trust property all or any part of the Settlor's funeral expenses, claims which are legally enforceable against the Settlor's estate and reasonable expenses of administration of the Settlor's estate, but the Trustee shall not make any such payments that are not in the best interests of any person having a beneficial interest in the remaining property of this trust upon termination. The payments made pursuant to this Section shall be made prior to the distributions provided for in Article II, Section G. The Trustee may make such payments directly or may pay over the amounts thereof to the duly qualified executor, personal representative, or administrator of the Settlor's estate. Written statements by the executor, personal representative, or administrator of the Settlor's estate of the sums that may be paid under this Section shall be sufficient evidence of their amounts, and the Trustee shall be under no duty to confirm that such payments were applied properly.

     **G.**    **Termination.** The trust created by this Article shall terminate upon the death of the Settlor.   Upon termination, the Trustee shall distribute the remaining income and principal of this trust to the following beneficiaries in equal shares:

    1.    JARROD REED ERWIN (the Settlor's son); provided, however, if he fails to survive the Settlor, this share of the remaining income and principal of this trust shall be distributed to his descendants who survive the Settlor per stirpes, or if no such descendant survives the Settlor, to the other beneficiaries named in this Section who are entitled to receive a portion of the remaining income and principal of this trust in proportion to their share of the overall distribution being made.

    2.    RYAN CORBETT ERWIN (the Settlor's son); provided, however, if he fails to survive the Settlor, this share of the remaining income and principal of this trust shall be distributed to his descendants who survive the Settlor per stirpes, or if no such descendant survives the Settlor, to the other beneficiaries named in this Section who are entitled to receive a portion of the remaining income and principal of this trust in proportion to their share of the overall distribution being made.



3.   KIMBERLY RENEE LEVICKY (the Settlor's daughter); provided, however, if she fails to survive the Settlor, this share of the remaining income and principal of this trust shall be distributed to her descendants who survive the Settlor per stirpes, or if no such descendant survives the Settlor, to the other beneficiaries named in this Section who are entitled to receive a portion of the remaining income and principal of this trust in proportion to their share of the overall distribution being made.

4.   RANDALL CHEN ERWIN (the Settlor's son); provided, however, if he fails to survive the Settlor, this share of the remaining income and principal of this trust shall be distributed to his descendants who survive the Settlor per stirpes, or if no such descendant survives the Settlor, to the other beneficiaries named in this Section who are entitled to receive a portion of the remaining income and principal of this trust in proportion to their share of the overall distribution being made.

Provided, however, that at the death of Settlor, the successor Trustee may, at his or her discretion, establish or create a fund in an amount not to exceed $125,000.00 to pay for any legal expenses and for the defense of any lawsuits which might arise or be filed by any third party against the Settlor or Settlor's estate or any legal proceeding filed by any third party against Jarrod and Ryan Erwin in relation to Settlor's prior business ventures.  In the event that no lawsuits are filed against the Settlor or his estate or in relation to the aforementioned business ventures within Four (4) years of the date of death of the Settlor, then this fund shall be distributed to the beneficiaries as named above in their proportionate shares.

If all of the foregoing beneficiaries fail to survive the Settlor, then all of the remaining income and principal of this trust shall be distributed to the Settlor's heirs.

## Article III.
## Contingent Trusts

**A.**   **Applicability.** With regard to any property which will pass outright to a beneficiary upon the death of the Settlor or upon the termination of a trust created hereunder, if such property is to be distributed to an individual who is under age 25 or who is incapacitated, such property shall be held by the Trustee as a separate trust for the benefit of such beneficiary. Alternatively, the Trustee, in the Trustee's discretion, may hold such property as custodian under the uniform transfers to minors act of any state, as it is the Settlor's intention to ensure maximum flexibility in the administration of such property.



**B.**   **Distributions.** The Trustee shall utilize such amounts of the income and principal of the beneficiary's trust as the Trustee, in the Trustee's discretion, deems desirable from time to time to provide for the beneficiary's health, education, maintenance and support, directly and without the interposition of any guardian or conservator.

**C.**   **Termination.** Each trust created by this Article for a beneficiary who is under age 25 shall terminate when such beneficiary attains that age. Each trust created by this Article for a person who is incapacitated shall terminate when the beneficiary of such trust, in the discretion of the Trustee, is no longer incapacitated. Upon the termination of a trust created by this Article, the remaining property of such trust shall be distributed to the beneficiary of such trust, but if a beneficiary dies before the termination of such beneficiary's trust, then upon such beneficiary's death the remaining property of such trust shall be distributed to such beneficiary's estate.

**Article IV.**
**Trustee Appointments**

**A**.   **Successor Trustee**. If ROY RANDOLPH ERWIN dies, resigns, becomes incapacitated, or otherwise fails or ceases to serve as Trustee of a trust created under this Trust Agreement, then the Settlor's daughter, KIMBERLY RENEE LEVICKY, shall become Trustee of such trust. If KIMBERLY RENEE LEVICKY fails to qualify, dies, resigns, becomes incapacitated, or otherwise fails or ceases to serve as Trustee of a trust created under this Trust Agreement, then the Settlor's son. JARROD REED ERWIN shall become Trustee of such trust.

**B.**   **Powers Over Trusteeship by Settlor.** The Settlor may at any time or from time to time remove the Trustee of the trust created under Article II, with or without cause, and shall contemporaneously appoint a replacement Trustee or Co-Trustees if no Trustee is serving following such removal. Furthermore, the Settlor may prospectively designate a successor individual or corporate Trustee, or a series of successor individual or corporate Trustees or Co-Trustees, to serve in the event the then-serving Trustee of the trust created under Article II dies, resigns, becomes incapacitated, or otherwise fails or ceases to serve, and such designation shall take precedence over any successor Trustees named by the Settlor in this Trust Agreement.



If the Settlor is not serving as Trustee, the Settlor may elect at any time to be the sole Trustee or a Co-Trustee by notice to the Trustee.

      **C.**     **Trustee Resignation or Vacancy.** Any Trustee may resign by giving notice to the Settlor, while the Settlor is living, and thereafter to the beneficiary of such trust. If the trusteeship of the trust created by Article II becomes vacant for any reason, the power to appoint a successor shall be exercisable by the Settlor; provided, however, if the Settlor fails to appoint a successor, and if no successor Trustee has been appointed pursuant to the terms of any other Section of this Article, the power to appoint a successor shall be exercisable by the Settlor's children (acting by majority, or by the last surviving child acting alone). After the death of the Settlor, the power to appoint a successor Trustee of a trust other than the trust created by Article II shall be exercisable by the Settlor's children (acting by majority, or by the last surviving child acting alone). If no successor Trustee has been appointed pursuant to the terms of this Section, then a successor Trustee shall be appointed by a court of competent jurisdiction.

      **D.**     **Expenses and Compensation.** Every Trustee shall be reimbursed for the reasonable costs and expenses incurred in connection with such Trustee's duties. Every Trustee, except the Settlor, shall be entitled to fair and reasonable compensation for services rendered by such Trustee in an amount not exceeding the customary and prevailing charges for services of a similar character at the time and place such services are performed.

      **E.**     **Waiver of Bond; Ancillary Trustees.** No Trustee acting hereunder shall be required to give bond or other security in any jurisdiction. If any trust created by this Trust Agreement contains property located in another state or a foreign jurisdiction, and the Trustee cannot or chooses not to serve under the laws of such state or foreign jurisdiction, the power to appoint an ancillary Trustee for such property (as well as any successor ancillary Trustee) shall be exercisable by the Settlor, or by the Trustee if the Settlor is not living or is not competent to act. An ancillary Trustee appointed pursuant to this Section may be an individual or corporate Trustee.

      **F.**     **"Trustee" Defined.** Unless another meaning is clearly indicated or required by context or circumstances, the term "Trustee" shall mean and include the initial Trustee and any successor Trustee or Co-Trustees. Except as otherwise specifically provided in this Trust Agreement, if Co-Trustees are designated to serve hereunder or if Co-Trustees are already serving, and one such Co-Trustee declines to serve, fails to qualify, dies, resigns, becomes incapacitated, or otherwise ceases to



6

serve for any reason, then the remaining Trustee or Co-Trustees, as the case may be, shall serve or continue to serve in such capacity.

      **G.**    <u>**Actions by Co-Trustees.**</u> In all matters relating to each trust created under this Trust Agreement, the decision of a majority of the Trustees then serving shall control. Any writing signed by the persons whose decision shall control shall be valid and effective for all purposes as if signed by all such Trustees.

      **H.**    <u>**"Corporate Trustee" Defined.**</u> The term "corporate Trustee" shall mean a bank having trust powers or a trust company either of which must have (alone or when combined with its parent organization and affiliate) assets beneficially owned by others under its management with a value in excess of $100,000,000 (U.S.), and such term shall also mean the successor (by merger, consolidation, change of name or any other form of reorganization, or if such corporate Trustee ever transfers all of its existing business of serving as a fiduciary to any other bank or trust company or corporation) bank or trust company to any such corporate Trustee named herein or serving hereunder. If a bank or trust company is specifically named herein or was a corporate Trustee (as defined above) when it accepted its fiduciary position hereunder, it shall not cease to be considered a corporate Trustee because its assets under management presently are or later decline below the amount stated above. In any instance where a corporate Trustee is required to be appointed as a successor Trustee or Co-Trustee in connection with the removal of any Trustee or Co-Trustee, the instrument of removal shall contain the acceptance of the corporate Trustee so appointed evidenced on it. If a corporate Trustee is serving as a Co-Trustee, it shall have exclusive custody of the properties, books and records of the trust as to which it is serving, but shall make such properties, books and records available for inspection and copying by every other Trustee of such trust.

<br>

### Article V.
### <u>Administrative Provisions</u>

      **A.**    <u>**Survivorship.**</u> For purposes of this Trust Agreement, no person shall be deemed to have survived the Settlor if such person shall die within 30 days after the Settlor's death; however, the Trustee may make distributions from the trusts created under this Trust Agreement within that period for the support of the Settlor's children. Any person who is prohibited by law from inheriting property from the Settlor shall be treated as having failed to survive the Settlor.



**B.**     __Right To Use Principal Residence.__ The Settlor or the primary beneficiary of a trust created hereunder shall have the right to use and occupy real or personal property owned by any trust created under this Trust Agreement as the Settlor's or such primary beneficiary's principal residence rent free, without charge, and at no cost (other than the payment of taxes and other costs and expenses specified in this Trust Agreement or ordered by a court) for life or until this Trust Agreement is revoked or terminated, whichever occurs first. Further, any such property (or any interest therein) shall be acquired by an instrument of title that describes the property with sufficient certainty to identify it and the interest acquired, and the instrument shall be recorded in the real property records of the county in which the property is located. This section shall be construed in accordance with the Settlor's intention that all eligible real or personal property which is owned by a trust created hereunder qualify for the homestead exemption and that the trust which owns such property is a "qualifying trust" as defined and described in Section 11.13(j) of the Texas Tax Code and, if applicable, Section 41.0021 of the Texas Property Code.

**C.**     __Revocation By Settlor.__ The Settlor may alter, amend, modify, revoke or terminate any of the provisions of this Trust Agreement by notice to the Trustee. Upon the death of the Settlor, this Trust Agreement shall become irrevocable.

**D.**     __Combination of Trusts.__ After the death of the Settlor, the Trustee, in the Trustee's discretion, may combine any trust created under this Trust Agreement with any other trust or trusts if the terms of such trusts are substantially similar, if such trusts have the same primary beneficiaries, and if such trusts have the same inclusion ratio as defined in Section 2642(a) of the Code. The Trustee shall not be obligated to combine such trusts. If trusts which are combined are to terminate at different times, the combined trust shall terminate in stages, with a pro rata portion of the combined trust being distributed to the appropriate beneficiaries when each such trust terminates. If trusts which are combined are to terminate at the same time but have different contingent beneficiaries, the remaining property of the combined trust shall be divided pro rata among the contingent beneficiaries of each trust. Any such pro rata distributions shall be made in proportion to the value of each trust at the time such trusts were combined.



8

**E.**     **Property Subject to Mortgage.** If at the time of the Settlor's death any real estate is subject to a mortgage, lien, or other debt, the beneficiary taking such real estate shall take it subject to such mortgage, lien, or other debt, and such beneficiary shall not be entitled to have the obligation secured thereby paid out of the trust estate. The Trustee is specifically given the right to renew, refinance and extend, in any form that the Trustee deems best, any secured or unsecured debt or charge existing at the time of the Settlor's death. Under no circumstances shall the Trustee be required to prepay any such debt.

## Article VI.
## Trustee Provisions

**A.**     **Powers.** The Trustee shall have all of the powers and authorities conferred upon trustees by statute or common law in any jurisdiction in which the Trustee may act, including all powers and authorities conferred by the Texas Trust Code and by any future amendments thereto, except for any instance in which such powers and authorities may conflict with the express provisions of this Trust Agreement, in which case the express provisions of this Trust Agreement shall control. In addition to such powers, the Trustee is specifically authorized:

(1)     To retain, in the discretion of the Trustee, any property transferred to the Trustee by the Settlor or any other person, including securities of any corporate Trustee, without regard to the duty to diversify investments under the laws governing any trust created hereunder and without liability for any depreciation or loss occasioned by such retention;

(2)     To exchange, sell or lease (including leases for terms exceeding the duration of any trust created by this Trust Agreement) for cash, property or credit, or to partition, from time to time, publicly or privately, at such prices, on such terms, times and conditions and by instruments of such character and with such covenants as the Trustee may deem proper, all or any part of the assets of each trust, specifically including the power to sell and convey real property and the power to execute deeds with regard to any such sale or conveyance, and no vendee or lessee of the Trustee shall be required to look to the application made by the Trustee of any funds paid to the Trustee;



9

(3)    To borrow money from any source (including any Trustee) and to mortgage, pledge or in any other manner encumber all or any part of the assets of any trust as may be advisable in the judgment of the Trustee for the advantageous administration of such trust;

(4)    To invest and reinvest any part of any trust in any kind of property whatsoever, real or personal (including oil, gas and other mineral leases, royalties, overriding royalties and other interests), whether or not productive of income and without regard to the proportion that such property or property of a similar character held may bear to the entire trust estate; provided, however, the Settlor may direct the Trustee as to the investments to be made by the Trustee, and the Trustee shall not be liable to any person for any losses resulting from following the written direction of the Settlor in investing the trust assets;

(5)    To employ attorneys, accountants, investment managers, specialists and such other agents as the Trustee shall deem necessary or desirable; to have the authority to appoint an investment manager or managers to manage all or any part of the assets of any trust, and to delegate to said manager investment discretion, and such appointment shall include the power to acquire and dispose of such assets; and to charge the compensation of such attorneys, accountants, investment advisors, investment managers, specialists and other agents and any other expenses against such trust;

(6)    To register and carry any securities or other property in the name of the Trustee or in the name of the nominee of any corporate Trustee (or to hold any such property unregistered) without increasing or decreasing the fiduciary liability of the Trustee; to exercise any option, right or privilege to purchase or to convert bonds, notes, stocks (including shares or fractional shares of stock of any corporate Trustee), securities or other property, and to borrow money for the purpose of exercising any such option, right or privilege; to vote any stock which may be held in any trust; and if two or more Trustees are serving hereunder and no such Trustee is a corporate Trustee, to open any type of account in such a manner that all activities associated with such account may be handled by one of the Co-Trustees acting alone;



10

(7)     To enter into any transaction on behalf of any trust (including loans to beneficiaries for adequate security and adequate interest) despite the fact that another party to any such transaction may be (i) a trust of which any Trustee under this Trust Agreement is also a trustee; (ii) an estate of which any Trustee under this Trust Agreement is also an executor, personal representative, or administrator; (iii) a business or trust controlled by any Trustee under this Trust Agreement or of which any such Trustee, or any director, officer or employee of any such corporate Trustee, is also a director, officer or employee; or (iv) the Settlor, any other beneficiary or any Trustee under this Trust Agreement acting individually;

(8)     To make, in the Trustee's discretion, any distribution required or permitted to be made to any beneficiary under this Trust Agreement, in any of the following ways when such beneficiary is a minor or is incapacitated: (i) to such beneficiary directly; (ii) to the guardian or conservator of such beneficiary's person or estate; (iii) by applying the required or permitted distribution for the benefit of such beneficiary; (iv) to a person or financial institution serving as custodian for such beneficiary under a uniform transfers to minors act of any state; (v) by reimbursing or advancing funds to the person who is actually taking care of such beneficiary (even though such person is not the legal guardian or conservator) for expenditures made or to be made by such person for the benefit of such beneficiary; and (vi) by managing such distribution as a separate fund on the beneficiary's behalf, subject to the beneficiary's continuing right to withdraw the distribution; and the written receipts of the persons receiving such distributions shall be full and complete acquittances to the Trustee;

(9)     To access, establish, control, use, cancel, deactivate, or delete the Settlor's Digital Accounts and Digital Assets, and to access, control, use, deactivate, or dispose of the Settlor's Digital Devices. "Digital Accounts" are electronic systems for creating, generating, sending, sharing, communicating, receiving, storing, displaying, or processing information which provides access to a Digital Asset which is stored on any type of Digital Device, regardless of the ownership of the Digital Device upon which the Digital Asset is stored. "Digital Assets" mean data, files, text messages, emails, documents, audio, video, images, sounds, social media content, social networking content, apps, codes, health care records, health insurance records, credit card points, travel-related miles and points, computer source codes, computer programs, software, software licenses, databases, or the like, including access credential such as usernames, passwords and answers to secret questions, which are created, generated, sent, communicated, shared, received, or stored by electronic means on a Digital Device. "Digital Devices" are electronic



devices that can create, generate, send, share, communicate, receive, store, display, or process information;

(10)   To purchase any of the property (including speculative investments) in the testamentary estate of the Settlor at its fair market value and to retain any property so acquired without liability for depreciation or loss occasioned by such purchase and retention;

(11)   To lend money to the testamentary estate of the Settlor upon adequate security and for adequate interest;

(12)   To invest the assets of any trust in any life insurance policy or policies (including term insurance) on the life of one or more of the beneficiaries of the trusts, or on the life of any person or persons in whom one or more of the beneficiaries of such trust have an insurable interest;

(13)   To store personal property given to a person who is a minor or who is incapacitated for later distribution to such person, or to sell such property and add the proceeds of sale to a trust of which such person is a beneficiary;

(14)   To make divisions, partitions, or distributions in money or in kind, or partly in each, whenever required or permitted to divide, partition, or distribute all or any part of any trust; and, in making any such divisions, partitions, or distributions, the judgment of the Trustee in the selection and valuation of the assets to be so divided, partitioned, or distributed shall be binding and conclusive, and the Trustee shall not be liable for any differing tax consequences to the beneficiaries hereunder; and, further, the Trustee shall be authorized to make distributions in divided or undivided interests and on a pro rata or non-pro rata basis and to adjust distributions for resulting differences in valuation;

(15)   To release, in the discretion of the Trustee, any fiduciary power at any time, in whole or in part, temporarily or permanently, whenever the Trustee may deem it advisable, by an instrument in writing executed and acknowledged by the Trustee;

(16)   To invest and reinvest all or part of the assets of any trust in any common trust fund of any corporate Trustee;



12

(17)   To open and maintain margin accounts or similar accounts with brokerage firms, banks or others for purposes of investing the properties of each trust; to conduct, maintain and operate these accounts, directly or through designation of another as agent, for purchase, sale and exchange of stocks, bonds, commodities, options (including puts and calls, both covered and uncovered), and other securities; and in connection therewith, to borrow money, obtain guarantees and engage in all other activities necessary or incidental to conducting, maintaining and operating such accounts;

(18)   To continue any business (whether a proprietorship, corporation, partnership, limited partnership or other business entity) which may be transferred to any trust for such time as the Trustee may deem it to be in the best interest of such trust; to employ in the conduct of any such business such capital out of any trust as the Trustee may deem proper; to borrow money for use in any such business alone or with other persons financially interested in such business, and to secure such loan or loans by a mortgage, pledge or any other manner of encumbrance of, not only such trust's interest in such business, but also such portion of such trust outside of such business as the Trustee may deem proper; to organize or acquire, either alone or jointly with others, corporations, partnerships, limited partnerships, limited liability companies or other business entities; and generally to exercise with respect to the continuance, management, sale or liquidation of any business which may be transferred to any trust, or of any new business or business interest, all the powers which may be necessary for its successful operation;

(19)   To execute lease, pooling or unitization agreements (including agreements of such nature extending beyond the terms of the trusts) with respect to any mineral or royalty interest held or acquired by any trust; to drill or contract for the drilling of wells for oil, gas or other minerals; to make dry hole or bottom hole contributions; to enter into any operating agreements with reference to any mineral leases or properties held or acquired by any trust; and generally, with reference to oil, gas and other mineral properties and operations, to enter into such agreements and to do all such other things (whether or not presently recognized as common or proper practice by those engaged in the business of prospecting for, developing, producing, processing, transporting or marketing oil, gas or other minerals) as the Trustee may deem to be advantageous;



(20)   To transfer such sums of the property of the Settlor to an individual serving as agent or attorney-in-fact under a valid power of attorney signed by the Settlor (or to several individuals serving jointly as agents or attorneys-in-fact under a valid power of attorney signed by the Settlor) as such agent or agents may request in order to make gifts, which are specifically authorized by such power of attorney, on behalf of the Settlor, or alternatively, to transfer such sums of the property of the Settlor directly to one or more persons or charities as directed by the Settlor's agent or attorney-in-fact under a valid power of attorney as long as such transfers are specifically authorized by such power of attorney;

(21)   To select and employ, at the discretion of the Trustee but at the expense of the trusts, any person, firm or corporation, engaged in rendering investment advisory services or investment management services, to furnish professional assistance or management in connection with making investments, managing securities, or making any other decisions with respect to the purchase, retention, sale or other disposition of property or securities belonging to the trusts; and

(22)   To employ a bank or trust company located anywhere within the United States, at the discretion of the Trustee but at the expense of the trusts, as custodian or agent; to have stock and securities registered in the name of such agent or custodian or a nominee thereof without designation of fiduciary capacity; and to appoint such bank or trust company to perform such other ministerial functions as the Trustee may direct. While such stock or securities are in the custody of any such bank or trust company, the Trustee shall be under no obligation to inspect or verify such stock or securities nor shall the Trustee be responsible for any loss by such bank or trust company.

**B.**   **Property, Books of Account and Records.** All properties, books of account and records of the trust created under Article II shall be made available for inspection at all times during normal business hours by the Settlor or by any person designated by the Settlor. Prior to the death of the Settlor, the Trustee shall provide an accounting to the Settlor, if requested by the Settlor. Furthermore, except as otherwise provided in this Section, within 60 days of receiving a written request from a beneficiary of a trust created hereunder who is entitled to receive an accounting, the Trustee shall furnish an accounting to such beneficiary. Any such accounting shall comply with the requirements of the Texas Trust Code and shall be deemed correct and binding one year after receipt by the requesting beneficiary. Notwithstanding the foregoing, with regard to each beneficiary of a trust who is under 25 years of age, the Trustee shall be



relieved of the duty to keep such beneficiary reasonably informed concerning the administration of such trust and the material facts necessary for such beneficiary to protect such beneficiary's interest.

   **C.**  <u>**Notice.**</u> Any notice required or permitted to be given by or to a person or a Trustee acting under this Trust Agreement must be given by acknowledged instrument actually delivered to the person or Trustee to whom it is required or permitted to be given. Any notice required or permitted to be given to a minor shall be given to such minor's parent who is closest in relation to the Settlor, or if no such parent is able to receive such notice, to such minor's guardian. Any notice required or permitted to be given to an adult incapacitated person shall be given to such adult incapacitated person's guardian, conservator, or agent under a validly executed and effective power of attorney. If such notice concerns a trusteeship, it shall state its effective date and shall be given at least 30 days prior to such effective date, unless such period of notice is waived. Any action permitted to be taken by a minor shall be taken by such minor's parent who is closest in relation to the Settlor, or if no such parent is able to take such action, by such minor's guardian. Any action permitted to be taken by an adult incapacitated person shall be taken by such adult incapacitated person's guardian, conservator, or agent under a validly executed and effective power of attorney.

   **D.**  <u>**Acts of Prior Trustees.**</u> Each Trustee shall be relieved of any duty to examine the acts of any prior Trustee, and no court accounting shall be required. Each successor Trustee shall be responsible only for those properties which are actually delivered to such Trustee. Each successor Trustee, upon executing an acknowledged acceptance of the trusteeship and upon receipt of those properties actually delivered to such successor Trustee, shall be vested with all of the estates, titles, rights, powers, duties, immunities and discretions granted to the prior Trustee.

   **E.**  <u>**Reliance on Legal Opinion.**</u> In acting or declining to act, each Trustee may rely upon the written opinion of a competent attorney, any facts stated in any instrument in writing and believed true, or any other evidence deemed sufficient. Each Trustee shall be saved harmless from any liability for any action taken, or for the failure to take any action, if done in good faith and without gross negligence.



15

### Article VII.
### Miscellaneous Provisions

**A.     Additions To Trust.** The Settlor, or any other person, may at any time, grant, transfer or convey, either by inter vivos transfer or by Will, to the Trustee such additional property as he or she desires to become a part of any trust hereby created and, subject to acceptance by the Trustee, such additional property shall be allocated to the trusts on the basis specified in the instrument by which such property is transferred, and shall thereafter be held, administered and distributed by the Trustee in accordance with the provisions of this Trust Agreement.

**B.     Spendthrift Provisions.** After the death of the Settlor, each trust created by this Trust Agreement shall be a spendthrift trust to the fullest extent allowed by law. Prior to the actual receipt of trust property by any beneficiary, no property (income or principal) distributable under any trust created by this Trust Agreement shall, voluntarily or involuntarily, be subject to anticipation or assignment by any beneficiary, or to attachment by or to the interference or control of any creditor or assignee of any beneficiary, or be taken or reached by any legal or equitable process in satisfaction of any debt or liability of any beneficiary, and any attempted transfer or encumbrance of any interest in such property by any beneficiary hereunder prior to distribution shall be void.

**C.     Descendants.** References to "descendant" or "descendants" (except as provided in Article I, Section B) mean lineal blood descendants of the first, second or any other degree of the ancestor designated; provided, however, that such references shall include, with respect to any provision of this Trust Agreement, descendants who have been conceived at any specific point in time relevant to such provision and who thereafter survive birth; and provided, further, except as hereinafter provided in this Section, an adopted child and such adopted child's lineal descendants by blood or adoption shall be considered under this Trust Agreement as lineal blood descendants of the adopting parent or parents and of anyone who is by blood or adoption a lineal ancestor of the adopting parent or of either of the adopting parents. Notwithstanding any provision in this Trust Agreement to the contrary, any person who is adopted (by anyone other than the Settlor) after reaching age 14 and any person who is a lineal descendant (whether by blood or adoption) of such person who is adopted (by anyone other than the Settlor) after reaching age 14 shall not be included in the definition of



16

"descendant" or "descendants" and shall not be considered as a lineal blood descendant of the adopting parent or parents.

     **D.**    **Discretion.** Whenever in this Trust Agreement an action is authorized in the discretion of the Trustee, the term "discretion" shall mean the absolute and uncontrolled discretion of the Trustee.

     **E.**    **Incapacitated.** A beneficiary (other than the Settlor) shall be deemed "incapacitated" if the Trustee, in the Trustee's discretion, determines that such beneficiary lacks the ability, due to a physical or mental condition, to manage his or her own personal and financial affairs. The Settlor or a Trustee shall be deemed "incapacitated" if and for as long as (i) a court of competent jurisdiction has made a finding to that effect, (ii) a guardian or conservator of the Settlor's or such Trustee's person or estate has been appointed by a court of competent jurisdiction and is serving as such, or (iii) two physicians (licensed to practice medicine in the state where the Settlor or Trustee is domiciled at the time of the certification, and one of whom shall be board certified in the specialty most closely associated with the cause of the Settlor's or Trustee's incapacity) certify that due to a physical or mental condition the Settlor or Trustee lacks the ability to manage his or her own personal and financial affairs. A Trustee shall immediately cease to serve upon being deemed incapacitated. The Settlor shall be deemed to have regained capacity if there is a finding to that effect by a court of competent jurisdiction or if two physicians (with the same qualifications described above) certify that the Settlor is capable of managing the Settlor's personal and financial affairs.

     **F.**    **Internal Revenue Code.** References to various Sections of the "Code" are to such designated Sections of the Internal Revenue Code of 1986, as amended.

     **G.**    **Heirs.** References to "heirs" are to those persons who would inherit separate personal property from the person designated under the statutes of descent and distribution of the State of Texas, if such person died intestate and single at such time.

     **H.**    **Governing Law.** The construction, validity and administration of each trust created under this Trust Agreement shall be controlled by the laws of the State of Texas. After the death of the Settlor, the Trustee may designate the laws of another jurisdiction as the controlling law with respect to the construction, validity and administration of a particular trust if either (i) the Trustee resides in, or administers that trust in, such designated jurisdiction (or in the case of a corporate Trustee, if such corporate Trustee is chartered in such designated jurisdiction), or (ii) the primary



17

beneficiary of such trust resides in such designated jurisdiction, in which case the laws of such designated jurisdiction shall apply to such trust as of the date specified in such designation. Any such designation shall be in writing and shall be delivered to each beneficiary of the affected trust.

**I.**      **Per Stirpes.** When a distribution is to be made to a person's descendants "per stirpes," property shall be divided into as many equal shares as there are (i) living children of such person, if any, and (ii) deceased children who left descendants who are then living. Each living child shall receive one share, and the share that would have passed to each deceased child shall be divided in a similar manner (by reapplying the preceding rule) among his or her then living descendants. For example, if a person has deceased children and living children when a distribution is to be made, the assets will be divided into equal shares at the child level and distributed per stirpes below that level; however, if the person has no living children at that time, that equal division will still be made at the child level and distributed per stirpes below that level. This definition is intended to override any conflicting or contrary common law definition. In the case of a distribution which is to be made "per stirpes" in the event of the death of the Settlor, references in this Section to "then living" or to "living" shall mean persons who survive the Settlor.

### Article VIII.
### <u>No Contest Clause</u>

If any beneficiary of a trust created hereunder in any manner, directly or indirectly, contests the validity of this Trust Agreement or any of its provisions, or institutes or joins in, except as a party defendant, any proceeding to contest the validity of this Trust Agreement or to prevent any provision hereof from being carried out in accordance with the terms hereof, then all benefits provided for such beneficiary and such contesting beneficiary's descendants are revoked and shall pass as if that contesting beneficiary and such contesting beneficiary's descendants had failed to survive the Settlor. Each benefit conferred herein is made on the condition precedent that the beneficiary receiving such benefit shall accept and agree to all of the provisions of this Trust Agreement or any trust created hereunder, and the provisions of this Article are an essential part of each and every benefit. The Trustee shall be reimbursed for the reasonable costs and expenses, including attorneys' fees, incurred in connection with the defense of any such contest.



IN WITNESS WHEREOF, the Settlor and the Trustee have hereunto set their hands as of the date first above written.

**Witnesses:**

_____

_Susan Waller_

**Witnesses:**

_____

_Susan Waller_

**Settlor:**

_____
ROY RANDOLPH ERWIN, Settlor

**Trustee:**

_____
ROY RANDOLPH ERWIN, Trustee

STATE OF TEXAS                                    §
                                                 §
COUNTY OF HARRIS                                  §

This instrument was acknowledged before me on the 13 day of _____, in the year 2021, by ROY RANDOLPH ERWIN as Settlor and as Trustee of the Roy Randolph Erwin Revocable Trust.

Priscilla Gilbert
My Commission Expires
06/27/2024
ID No. 128328754

_____
Notary Public, State of Texas

_____

19

## SCHEDULE "A" - INITIAL TRUST PROPERTY

1.      2019 Dodge Grand Caravan, VIN #2C7WDG-BG8KR504227

2.      IBC Bank, Account #113919027 in the name of Roy R. Erwin having an approximate value of $5,000.00 at the time of execution of this Trust Agreement

3.      Contents of Safe Deposit Box at IBC bank having cash contained therein in the approximate amount of $391,000.00.

4.      Bank of America, Account #586038208178 in the name of Roy R. Erwin and having an approximate value of $12,000.00 at the time of execution of this Trust Agreement

5.      East/West Bank, Account #26-81014383 in the name of Roy R. Erwin and having an approximate value of $8,300.00 at the time of execution of this Trust Agreement.

6.      All issued and outstanding stock owned by Settlor in Winding Way Holdings, Inc. and including that on certain corporate bank account at Bank of America - Corporate Account- Winding Way Holdings, Inc., Account #488091459994 and having an approximate value of $240,000.00 at the time of execution of this Trust Agreement.